IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

Case No.  04-35660

BRIAN DAVIS

Debtor

CHATTANOOGA AGRICULTURAL
CREDIT ASSOCIATION

Plaintiff

v.                                                                   Adv. Proc. No. 05-3096

BRIAN DAVIS

Defendant

## MEMORANDUM ON MOTION TO DISMISS

APPEARANCES:   CLEVELAND & CLEVELAND, P.C.
  John W. Cleveland, Esq.
  120 W. Morris Street
  Sweetwater, Tennessee  37874
  Attorneys for Plaintiff

  DENNA F. MIDDLETON, ESQ.
  9111 Cross Park Drive
  Suite D-200
  Knoxville, Tennessee  37923
  Attorney for Defendant/Debtor

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint Under § 523 of the Bankruptcy Code to Determine the Dischargeability of a Debt (Complaint) filed by the Plaintiff, Chattanooga Agricultural Credit Association, on May 6, 2005, asking the court for a determination that a debt owed it by the Defendant/Debtor is nondischargeable under 11 U.S.C.A. § 523 (West 2004).[1] On July 7, 2005, the Debtor filed an Answer, combined with a Motion to Dismiss, arguing that the Plaintiff's Complaint was filed after the deadline for filing complaints to determine dischargeability and, therefore, should be dismissed.[2] Pursuant to E.D. Tenn. LBR 7007-1, the Plaintiff filed a Response to Motion to Dismiss on July 15, 2005,[3] arguing that the court should exercise its equitable powers under 11 U.S.C.A. § 105(a) (West 2004), and allow it to proceed with its adversary proceeding against the Debtor.

In its resolution of the Debtor's Motion to Dismiss, the court takes judicial notice of the record in the entire case file in the Debtor's underlying bankruptcy case, pursuant to Rule 201 of the Federal Rules of Evidence.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

---

[1] The Complaint states that the Debtor "is not entitled to a discharge of his debt owed to Plaintiff pursuant to §§ 523(b)(2) of the Bankruptcy Code[.]" Although 11 U.S.C.A. § 523(b) (West 2004) does not address the dischargeability of debts, the Plaintiff has pled facts sufficient for the court to deduce that it asserts that the debt is nondischargeable under 11 U.S.C.A. § 523(a)(2)(A) (West 2004).

[2] On July 12, 2005, the court denied without prejudice the Debtor's Motion to Dismiss for failure to comply with E.D. Tenn. LBR 7007-1. Thereafter, on July 18, 2005, the Debtor filed his combined Amended Motion to Dismiss and Answer to Complaint, which does comply with the Local Rules.

[3] The court entered an Order on July 20, 2005, directing that the Plaintiff need not file a second response to the Debtor's Amended Motion to Dismiss and Answer to Complaint. Nevertheless, on July 25, 2005, the Plaintiff filed another Response and Brief in Opposition to the Debtor's Amended Motion to Dismiss.

# I

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on June 3, 2004. The deadline for filing a complaint requesting a determination of the dischargeability of a debt under 11 U.S.C.A. § 523(c) (West 2004)[4] was January 28, 2005. The Plaintiff filed its Complaint on May 6, 2005, over three months after the bar date for filing dischargeability complaints under § 523(c) had expired.

The Plaintiff avers that in September 2001, the Debtor borrowed $25,800.00 through a Revolving Variable Rate Note, representing that he would use the funds to pay off the lien encumbering his thirty-nine head of beef cattle and that he would then sell the cattle, using the proceeds to purchase replacement beef cattle. Additionally, the Plaintiff avers that the Debtor pledged all of his beef cattle, proceeds, and after-acquired beef cattle to the Plaintiff as security for the Note, but, at the time he pledged the security, the Debtor did not own any beef cattle and/or he failed to apply the proceeds from the sale of any beef cattle to the balance owed the Plaintiff. Finally, the Plaintiff alleges that the Debtor did not purchase any beef cattle with the funds loaned by the Plaintiff. Accordingly, the Plaintiff seeks a judgment against the Debtor for the $25,800.00 balance of the Note, and a determination that the judgment is nondischargeable.

---

[4] Section 523(c) provides in material part:

    (1) [T]he debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

11 U.S.C.A. § 523(c) (West 2004).

The Debtor, in his combined Answer and Motion to Dismiss, neither admitted nor denied borrowing the funds from the Plaintiff, representing that the purpose of a loan was to purchase additional cattle, and/or pledging beef cattle, proceeds, and after-acquired cattle to the Plaintiff. With respect to the allegations of fraud, however, the Debtor denied that he did not own beef cattle at the time he became indebted to the Plaintiff or that he sold his cattle without applying the proceeds to an indebtedness owed to the Plaintiff and that he did not purchase any beef cattle with the proceeds of a loan with the Plaintiff. As grounds for his Motion to Dismiss, the Debtor correctly contends that the Plaintiff's Complaint was filed after the deadline for complaints to determine dischargeability, and it should, therefore, be dismissed.

## II

A primary purpose of Chapter 7 bankruptcy is to relieve "the honest but unfortunate" debtor of his debts and allow him a "fresh start" through a discharge of those debts. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). 11 U.S.C.A. § 727 (West 2004) provides for this general discharge of pre-petition debts, subject, however, to § 727(b), which limits the discharge to debts "[e]xcept as provided in section 523 of this title . . . ." 11 U.S.C.A. § 727(b). Included among those debts excepted by § 523 are those for money or property obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C.A. § 523(a)(2). Nevertheless, this type of debt will be discharged unless the creditor requests a determination of nondischargeability from the court. 11 U.S.C.A. § 523(c)(1). Section 523(a) is construed strictly against the Plaintiff and liberally in favor of the Debtor. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *Haney v. Copeland (In*

4

*re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003). The burden of proving, by a preponderance of the evidence, the elements under § 523(a) falls upon the party seeking a determination of nondischargeability. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991).

Rule 4007 of the Federal Rules of Bankruptcy Procedure governs the procedure for obtaining a determination of nondischargeability and states, in material part:

(a) Persons entitled to file complaint

    A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.

. . . .

(c) Time for filing complaint under § 523(c) in a chapter 7 liquidation . . .; notice of time fixed

    A complaint to determine the dischargeability of a debt under § 523(c) [in a chapter 7 liquidation] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). . . . On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

. . . .

(e) Applicability of rules in Part VII

    A proceeding commenced by a complaint filed under this rule is governed by Part VII[5] of these rules.

FED. R. BANKR. P. 4007. In the Sixth Circuit, the deadline imposed by Rule 4007(c) is not jurisdictional, and is therefore subject to equitable defenses, including waiver, estoppel, and equitable tolling. *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 343-44 (6th Cir. 2003). This decision, however, does not

---

[5] Part VII of the Federal Rules of Bankruptcy Procedure is entitled "ADVERSARY PROCEEDINGS," and pursuant to Rule 7001, "a proceeding to determine the dischargeability of a debt[]" is an adversary proceeding. FED. R. BANKR. P. 7001(6). Rule 7003, entitled "Commencement of Adversary Proceeding," states that "Rule 3 [of the Federal Rules of Civil Procedure] applies in adversary proceedings." FED. R. BANKR. P. 7003. Rule 3 of the Federal Rules of Civil Procedure provides that "[a] civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3.

5

require the court to allow an untimely filed Complaint, but simply allows the court to consider equitable defenses to the timing requirement of Rule 4007(c). *See In re Witt*, 304 B.R. 340, 344 (Bankr. E.D. Tenn. 2003).

The Plaintiff acknowledges that it did not timely file its Complaint. Nonetheless, the Plaintiff argues that it would be inequitable for the court to dismiss the Complaint for several reasons. The Plaintiff's argument centers, primarily, around the fact that its counsel obtained approval from the Debtor's attorney and the Chapter 7 Trustee to execute a Consent Decree in the Debtor's bankruptcy case, declaring that the Debtor's debt owed to the Plaintiff was nondischargeable. In its Brief in Opposition to Motion to Dismiss, filed on July 15, 2005, the Plaintiff states as follows:

> The late filing was caused by a combination of time passing while the debtor/Defendant responded to time allowed by the Trustee to account for the collateral he pledged to secure Plaintiff's debt, obtaining agreement of Defendant's counsel and the Trustee to entry of a Consent Decree declaring Defendant's debt to Plaintiff non-dischargeable, drafting the Consent Decree, obtaining approval for entry of the Consent Decree, submission of the Consent Decree to the Court and receipt of the Court's memorandum rejecting the Order. By the time Plaintiff's proffered Consent Decree was rejected by the Court, the bar date had passed.[6]

PLAINTIFF'S OPP. BRIEF, at 1. As explanation for filing a Consent Decree in the Debtor's case rather than filing an adversary proceeding, the Plaintiff states that "Plaintiff's counsel had been advised by a Chattanooga attorney familiar with bankruptcy practice in that city that orders declaring debts nondischargeable are customarily approved outside adversary proceedings in the Southern Division of this District when there is no issue among the parties" and since the Debtor's attorney and the Trustee "approved" the Consent Decree, the Plaintiff's reliance was justified. PLAINTIFF'S OPP. BRIEF, at 4.

---

[6] The Consent Decree was tendered to the court by the Plaintiff's counsel on February 25, 2005, twenty-eight days after expiration of the § 523(c) bar date on January 28, 2005. This disparity in dates was not known by the court at the time the Consent Decree was returned to Plaintiff's counsel because the court did not investigate the timeliness issue. In the one or two prior instances where parties have attempted to resolve § 523(c)(1) dischargeability issues in a debtor's case rather than by the required filing of an adversary proceeding, the court has consistently declined to sign the proposed dispositive order.

6

Based upon these arguments, it appears that the Plaintiff is asserting either estoppel or equitable tolling as equitable defenses.

The doctrine of equitable estoppel "precludes a party to a lawsuit from raising a certain defense, regardless of the merits of the defense, because of some improper conduct on that party's part." *State Bank of Coloma v. Nat'l Flood Ins. Program*, 851 F.2d 817, 819 (6th Cir. 1988). "The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom the estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004).

Distinguished from equitable estoppel is equitable tolling, which "applies when there is no allegation of impropriety on the defendant's part." *Hill v. United States Dep't of Labor*, 65 F.3d 1331, 1335 n.2 (6th Cir. 1995). Courts generally consider the following five factors when examining whether to apply the doctrine of equitable tolling: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Maughan*, 340 F.3d at 344 (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). When there is no dispute that the creditor received notice of the deadlines, the court's "inquiry must focus on the diligence used by the plaintiff in pursuing its rights and the resulting prejudice, if any, to the defendant." *Maughan*, 340 F.3d at 344 (quoting *First Bank Sys. v. Begue (In re Begue)*, 176 B.R. 801, 804 (Bankr. N.D. Ohio 1995)).

After analyzing the facts surrounding this case, the court finds that neither equitable defense is applicable, and the Plaintiff's Complaint will accordingly be dismissed because it was not filed within the time required by the Federal Rules of Bankruptcy Procedure. First, with respect to equitable

estoppel, the Plaintiff's counsel intimates in his Brief in Opposition to Motion to Dismiss that the Debtor's attorney and the Chapter 7 Trustee led him to believe that it was unnecessary to actually file an adversary proceeding; however, the record is wholly unsupported by any evidence that either of those parties deliberately, or unintentionally, made any representations that would serve to mislead the Plaintiff's attorney. The fact that the Debtor's attorney and the Chapter 7 Trustee authorized the Plaintiff's counsel to sign the Consent Decree indicating their agreement thereto did not relieve the Plaintiff of its obligation and responsibility to ensure that it was proceeding properly.[7] Neither of those individuals was under an obligation to instruct the Plaintiff's attorney to file an adversary proceeding or to otherwise provide advice to the Plaintiff's counsel as to how he should proceed with the Plaintiff's claim against the Debtor. This court routinely entertains and approves agreed judgments between parties relative to the nondischargeability of debts encompassed within § 523(c)(1), provided, however, that the requirements set forth in the Federal Rules of Bankruptcy Procedure have been complied with regarding the filing of a complaint. Because Federal Rule of Bankruptcy Procedure 4007(c) unambiguously speaks to the time required for the filing of a dischargeability action under § 523(c), the court questions counsel's solicitation of, and reliance on, advice that countermands a Rule with which he is familiar.[8] The court finds that an application of equitable estoppel is not proper in this case.

Similarly, the court will not apply equitable tolling in this case. The Plaintiff was listed in the Debtor's statements and schedules, and it received notice of the bankruptcy filing and of the January 28, 2005 bar date for filing a complaint seeking a determination of the dischargeability of a debt under § 523(c). The Plaintiff's attorney was present at the first scheduled meeting of creditors on November

---

[7] The involvement of the Chapter 7 Trustee in this matter, particularly in the approval of the Consent Decree, appears to have been gratuitous because the Trustee is not a necessary party to a creditor dischargeability action.

[8] The Plaintiff acknowledges that the Consent Decree, without the filing of an underlying complaint, "contradicted a rule of procedure." PLAINTIFF'S OPP. BRIEF, at 4.

29, 2004, at which the Debtor did not appear, and again at the rescheduled meeting on December 13, 2004. Thereafter, the Plaintiff was not diligent in pursuing its rights. The Plaintiff argues that it was waiting "while the [Debtor] responded to time allowed by the Trustee to account for the collateral he pledged to secure Plaintiff's debt," which is partially the reason for the untimely filing. PLAINTIFF'S OPP. BRIEF, at 1. However, when it became clear that the January 28, 2005 deadline for filing dischargeability complaints was approaching, there was nothing to prevent the Plaintiff from requesting an extension of the deadline, especially if it was waiting on this information from the Debtor and/or the Chapter 7 Trustee.

Once the Plaintiff deduced that the information sought was not forthcoming, its counsel apparently set about "obtaining agreement of Defendant's counsel and the Trustee to entry of a Consent Decree . . ., drafting the Consent Decree, obtaining approval for entry of the Consent Decree, [and submitting] the Consent Decree to the Court[.]" PLAINTIFF'S OPP. BRIEF, at 1. There has been no evidence presented as to when the Plaintiff began this series of events, but, again, if the Plaintiff was running up against the deadline, it should have filed a motion to extend the deadline with the court in order to allow additional time to complete this process. Nevertheless, the Plaintiff did not even tender the Consent Decree to the court until February 25, 2005, almost a month after expiration of the January 28, 2005 bar date for filing § 523(c) dischargeability complaints.[9]

Finally, and significantly, the Plaintiff did not act once it was made aware that it must file an adversary proceeding. The court returned the Consent Decree to the Plaintiff's attorney along with a "memorandum" dated March 2, 2005, advising that "[t]his court will not enter agreed judgments in

---

[9] The Consent Decree was transmitted to the court by way of a letter from Plaintiff's counsel dated February 23, 2005.

9

nondischargeability actions arising under 11 U.S.C. § 523(a)(2) . . . in the absence of the filing of a complaint." However, the Complaint was not filed until May 6, 2005, more than two months later. The Plaintiff has not offered any explanation concerning this two-month delay, which the court finds was unreasonable under the circumstances.[10]  *See also Witt*, 304 B.R. at 344.

Based upon the foregoing, the court finds that the Plaintiff's Complaint was not timely filed pursuant to Rule 4007(c) of the Federal Rule of Bankruptcy Procedure. Accordingly, the Debtor's Motion to Dismiss will be granted.

An order consistent with this Memorandum will be entered.

FILED:

                BY THE COURT

                /s/  RICHARD STAIR, JR.

                RICHARD STAIR, JR.
                UNITED STATES BANKRUPTCY JUDGE

---

[10] The court is not suggesting that a complaint filed immediately after the Consent Decree was returned to Plaintiff's counsel on March 2, 2005, would have survived a motion to dismiss. Rather, the court wonders why the Plaintiff, knowing that the court would not sign the Consent Decree, waited two additional months to file the Complaint.